

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ANTHONY EDWARD ZELLNER,

    Petitioner,

v.                                          CRIMINAL NO. 2:99-cr-164

UNITED STATES OF AMERICA,

    Respondent.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Anthony Edward Zellner's ("Petitioner") Motion for Compassionate Release. ECF No. 77.

**I. FACTUAL AND PROCEDURAL HISTORY**

On June 19, 1997, Petitioner and two co-conspirators stole a minivan from two individuals who were attempting to buy crack cocaine from them. Later that day, Petitioner and the two co-conspirators used the minivan as a getaway vehicle after burglarizing the house of a drug dealer. The target escaped during the armed burglary, but Petitioner and his co-conspirators kidnapped his girlfriend and made off with two kilograms of cocaine, a substantial sum of cash, and a car. After the burglary, Petitioner was dropped off at his home in Norfolk and his co-conspirators drove away in the minivan with the kidnapped woman inside. Three days later, she was found dead in the back of the abandoned minivan. On October 19, 1999, Petitioner pleaded guilty to Count 1 of the Criminal Information charging him with Conspiracy to Possess with the Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 846, 841(a). ECF No. 3. On February 3, 2000, Petitioner was sentenced to a term of 384 months imprisonment. ECF No. 8.

Petitioner filed his *pro se* letter motion on April 13, 2020 and requested the appointment of counsel on April 29, 2020. ECF Nos. 76, 78. Petitioner also supplemented his *pro se* filing on April 29, 2020. ECF No. 77. The Court ordered the appropriate responses on May 1, 2020 and supplemented its order on May 8, 2020. ECF Nos. 79, 85. Petitioner, through counsel, responded to the Court's orders on May 18, 2020. ECF No. 87. The Government responded in opposition on June 3, 2020. ECF No. 89. Petitioner replied to the Government's response on May 8, 2020. ECF No. 90. This matter is ripe for disposition.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A district court may modify a petitioner's sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.*; *see also Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020) (discussing the reasons "judicial waiver of the exhaustion requirement is permissible in light of the extraordinary threat certain inmates face from COVID-19").

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing

2

Commission ("Sentencing Commission") in U.S.S.G. §1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. §1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the Bureau of Prisons before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. §1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the Bureau of Prisons. As such, U.S.S.G. §1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors,

including but not limited to those listed in U.S.S.G. §1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

## III. DISCUSSION

### A. The Exhaustion Issue

This Court has previously held that the exhaustion requirement within § 3582(c)(1)(A) may be waived in the midst of the COVID-19 pandemic. *See supra* Part II.A; *Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020). In addition, the Court finds that Petitioner filed his administrative request for compassionate release with the Bureau of Prisons on December 4, 2019 and was denied on January 9, 2020. ECF No. 76 at 26. Therefore, Petitioner has satisfied the exhaustion requirement within § 3582(c)(1)(A) because Petitioner's administrative request was denied by the Bureau of Prisons.

### B. Resolution of the Defendant's Request for Compassionate Release

*1. Consideration of the Factors Listed in 18 U.S.C. § 3553(a)*

In its consideration of the factors listed in 18 U.S.C. § 3553(a), the Court notes that Petitioner's offense conduct is much more serious than the title of his offense of conviction. Although Petitioner was convicted of Conspiracy to Possess with the Intent to Distribute Cocaine, the driver of his Total Offense Level of 45 was a cross reference for First Degree Murder. U.S.S.G. §2A1.1 (listing a base offense level of 43 for First Degree Murder); ECF No. 86 at 19 (adding two points for restraint of the victim pursuant to U.S.S.G. §3A1.3, creating a total offense level of 45). The facts of Petitioner's case clearly indicate that his offense conduct was Felony Murder. *Id.* at ¶ 10 ("[Petitioner] stated that he was sorry that someone was killed as a result of the robbery and that he would not have participated in the robbery had he known that someone would be killed or injured"). In combination with Petitioner's Criminal History Category of V, Petitioner's

4

mandatory guidelines range was 360 months to life at the time of sentencing. Accordingly, the Sentencing Guidelines did not have a "racially disparate impact" as applied to Petitioner, though he was nominally convicted of a drug offense and the Sentencing Guidelines range was mandatory at the time his sentence was imposed. *See Jones v. United States*, 431 F. Supp. 3d 740, 747, 749 (E.D. Va. Jan 6, 2020) (discussing the draconian impact of mandatory guidelines sentences for drug offenses, especially on crack cocaine defendants who also faced mandatory consecutive time for violations of 18 U.S.C. § 924); *see also United States v. Booker*, 543 U.S. 220 (2005) (rendering the Sentencing Guidelines advisory, rather than mandatory).

Despite the fact that the Sentencing Guidelines are now advisory, U.S.S.G. §2A1.1 would still apply if Petitioner were sentenced today. Downward departures for Felony Murder below the minimum guideline sentence provided for Second Degree Murder are generally inappropriate. U.S.S.G. §2A1.1, n. 2(B); U.S.S.G. §2A1.2(a) (listing a base offense level of 38 for Second Degree Murder). Even if Petitioner's base offense level was 38 consistent with U.S.S.G. §2A1.2(a), his total offense level would be 40. In combination with the applicable enhancements and Petitioner's Criminal History Category of V, the advisory guidelines range would remain 360 months to life. Accordingly, any downward departure would still be limited to the same guidelines range that was applicable to Petitioner's original sentence. Further, Petitioner's offense conduct was extremely dangerous, as he participated in an armed home invasion and kidnapping, even if he was not the triggerman in the murder. *See* U.S.S.G. §2A1.1, n. 2(B) ("[t]he extent of the departure should be based upon the defendant's state of mind, the degree of risk inherent in the conduct, and the nature of the underlying offense conduct"). Based on the foregoing, Petitioner's offense conduct strongly implicates the need for a sentence "to reflect the seriousness of the offense…and to provide just

punishment" as well as to deter participation in criminal conduct that may culminate in felony murder. 18 U.S.C. § 3553(a)(2)(A)–(B).

In its evaluation of the § 3553(a) factors, the Court also considers that Petitioner is now 50 years old. ECF No. 86 at 2. He has a history of minor incident reports at the BOP, though he disputes factual context of many of the reports. ECF No. 87-7. Petitioner has also participated in rehabilitative programming and developed a work history while incarcerated. ECF Nos. 87-2, 87-3, 87-7. He was married in 2016 and has four surviving children from previous relationships. ECF No. 86 at ¶ 30; ECF No. 87-7. After full consideration of the § 3553(a) factors, the Court concludes that the purposes of Petitioner's sentence remain unfulfilled.

2. *Evaluation of "Extraordinary and Compelling Reason"*

In evaluating whether an "extraordinary and compelling reason" for a sentence reduction has been established, the Court considers the severity of the ongoing COVID-19 outbreak in federal prisons. *See e.g. Wilson v. Williams*, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020) (documenting the BOP's ineffective efforts to curtail the spread of the virus within FCI Elkton). Specific to each petitioner, the Court examines the Centers for Disease Control's list of risk factors for severe COVID-19 complications when assessing compassionate release motions during the pandemic. *United States v. Lewellen*, 2020 WL 2615762, at *4 (N.D. Ill. May 22, 2020).

Here, Petitioner offers his hypertension, high cholesterol, and kidney disease as underlying conditions that may exacerbate a potential COVID-19 infection. ECF No. 87 at 4. He also argues that he has chronic cholecystitis, helicobacter pylori gastritis, diabetes, and a BMI over 50. *Id.* Finally, Petitioner contends that his release is necessary for him to tend to his wife, who lives in New York City. *Id.* at 6–7.

The Court is unable to conclude that Petitioner is particularly vulnerable to COVID-19 based on his medical records, which do not provide enough information about his medical issues to show a heightened risk of severe illness or death. *See United States v. Dickson*, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) ("[petitioner] offers no proof, such as medical records that would substantiate [underlying health issues]"); *United States v. Clark*, 2019 WL 1052020, at *3 (W.D.N.C. Mar. 5, 2019) (denying motion for compassionate release because the petitioner failed to supply medical records to substantiate medical claims). There is no support for the contention that Petitioner is currently impacted by chronic gallbladder and gastrointestinal issues, diabetes, or obesity, as Petitioner had gallbladder removal surgery in 2017 and there is no documentation of Petitioner's diabetes or weight in the medical record submitted to the Court. ECF No. 87-1. Petitioner is also not on dialysis, making it uncertain whether he is particularly vulnerable to a potential COVID-19 infection based on the condition of his kidneys. *See Groups at Higher Risk for Severe Illness: Chronic Kidney Disease Being Treated with Dialysis*, CTRS. FOR DISEASE CONTROL (June 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#chronic-kidney-disease. The Court's task is further complicated by the fact that Petitioner's medical records are nearly three years old and relate to Petitioner's resolved gallbladder condition rather than the extent of Petitioner's presently relevant chronic health issues.

The Court is also unpersuaded that Petitioner's release is necessary to care for his wife. The evidence on the record fails to establish that Petitioner is the only available caregiver for his wife, notwithstanding the evidence of her sickness. *See* U.S.S.G. § 1B1.13, n. 1(C)(ii) (advising the Court that compassionate release may be justified "when the defendant would be the only available caregiver for the spouse").

Based on the foregoing reasoning, the Court is unable to find an extraordinary and compelling reason for relief after considering the unfulfilled purposes of Petitioner's original sentence.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
July 7, 2020

Raymond A. Jackson
United States District Judge