

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ANTHONY EDWARD ZELLNER,

    Petitioner,

v.

                                CRIMINAL NO. 2:99-cr-164

UNITED STATES OF AMERICA,

    Respondent.

### MEMORANDUM OPINION AND ORDER

On August 10, 2020, Petitioner Anthony Edward Zellner ("Petitioner") submitted a Motion for Reconsideration of Petitioner's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) due to threats imposed by the ongoing COVID-19 pandemic. ECF No. 95. The Court denied Petitioner's Motion for Compassionate Release on July 7, 2020. ECF No. 91. For the reasons set forth below, Petitioner's Motion for Reconsideration of his request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is **GRANTED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On June 19, 1997, Petitioner and two co-conspirators stole a minivan from two individuals who were attempting to buy crack cocaine from them. Later that day, Petitioner and the two co-conspirators used the vehicle as a get-away-car after burglarizing the home of a drug dealer. The drug dealer escaped during the burglary; however, Petitioner and his co-conspirators kidnapped the drug dealer's girlfriend, took two kilograms of the drug dealer's cocaine, and stole a substantial sum of cash and a car. After the burglary, Petitioner was dropped off at his home in Norfolk and his co-conspirators drove away in the minivan with the kidnapped woman inside. Three days later,

she was found dead in the back of the abandoned minivan. Although Petitioner did take part in the woman's kidnapping, Petitioner was not involved in the woman's homicide.

On October 19, 1999, Petitioner pleaded guilty to Count 1 of the Criminal Information charging him with Conspiracy to Possess with the Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 846, 841(a). ECF No. 3. On February 3, 2000, Petitioner was sentenced to a term of 384 months imprisonment. ECF No. 8. As of the date of this filing, Petitioner has served over 21 years and 7 months toward his sentence. ECF No. 86.

Petitioner filed his *pro se* letter motion on April 13, 2020 and requested the appointment of counsel on April 29, 2020. ECF Nos. 76, 78. The Court ordered the appropriate responses on May 1, 2020 and supplemented its order on May 8, 2020. ECF Nos. 79, 85. Petitioner, through counsel, responded to the Court's orders by filing the Motion for Compassionate Release due to the threats imposed by the ongoing COVID-19 pandemic. ECF No. 87. The Government responded in opposition on June 3, 2020. ECF No. 89. Petitioner replied to the Government's response on June 8, 2020. ECF No. 90.

On July 7, 2020, the Court denied Petitioner's Motion for Compassionate Release. ECF No. 91. In its Memorandum Opinion and Order, the Court stated:

> "The Court is unable to conclude that Petitioner is particularly vulnerable to COVID-19 based on his medical records, which do not provide enough information about his medical issues to show a heightened risk of severe illness or death."

*Id.* at 7. On August 9, 2020, Petitioner submitted Petitioner's Motion for Reconsideration and filed an Amended Motion for Reconsideration on August 10, 2020. ECF Nos. 94, 95. Both the original Motion and the amended version attach supplemental medical records detailing Defendant's health issues related to chronic kidney disease and obesity. ECF No. 95-1. The

government declined to respond to either the original Motion for Reconsideration or the Amended Motion for Reconsideration. This matter is ripe for disposition.

## II. LEGAL STANDARD

### A. Standard for Motions for Reconsideration

Although motions for reconsideration are generally disfavored, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") recognizes three limited grounds for a district court's grant of a motion for reconsideration: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice. *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993); *see also Pendergrass v. United States*, 2001 U.S. Dist. LEXIS 23933, at *1-2 (D.S.C. 2001). The Fourth Circuit has emphasized that mere disagreement with the court's ruling does not warrant reconsideration. *Hutchinson*, 994 F.2d at 1081 (citing *Atkins v. Marathon LeTorneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990)). Instead, a motion for reconsideration exists for the purpose of allowing "the court to reevaluate the basis for its decision." *Keyes v. Nat'l R.R. Passenger Corp.*, 766 F. Supp. 277, 280 (E.D. Pa. 1991). A motion for reconsideration is not a tool with which an unsuccessful party may "'rehash' the same arguments and facts previously presented." *Id.*; *Pendergrass*, 2001 U.S. Dist. LEXIS 23933, at *2.

### B. The Exhaustion Requirement

A district court may modify a petitioner's sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies

3

prior to bringing a motion before the district court. *Id.* Courts may; however, waive the exhaustion requirement under exigent circumstances. *Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020) (discussing the reasons "judicial waiver of the exhaustion requirement is permissible in light of the extraordinary threat certain inmates face from COVID-19").

**C. The Compassionate Release Standard**

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Such "extraordinary and compelling reasons" were previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. §1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. §1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the Bureau of Prisons before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. §1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the Bureau of Prisons. As such, U.S.S.G. §1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May

26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. §1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

**A. Petitioner's Motion for Reconsideration**

The Court will grant Petitioner's Motion for Reconsideration for two reasons: (1) the Motion attaches new evidence of Petitioner's ailing health and severe illnesses, and (2) considering the new evidence, it would be a manifest injustice not to reconsider the Court's prior ruling. *See Hutchinson*, 994 F.2d at 1081. In Petitioner's Motion for Compassionate Release, Petitioner discussed health challenges related to his gallbladder, gastrointestinal issues, and obesity. ECF No. 87-1. The Court denied Petitioner's Motion for Compassionate Release due, in large part, to the Court's finding that:

> "[t]here is no support for the contention that Petitioner is currently impacted by chronic gallbladder and gastrointestinal issues, diabetes, or obesity, as Petitioner had gallbladder removal surgery in 2017 and there is no documentation of Petitioner's diabetes or weight in the medical record submitted to the Court."

ECF No. 91. Further, the Court noted that "Petitioner's medical records [we]re nearly three years old" with no additional evidence to support Petitioner's alleged health conditions. *Id.*

5

As a supplement to Petitioner's previously submitted medical records, the new evidence provides a detailed assessment of Petitioner's failing health over the past three years. ECF No. 95-1. According to the medical records, as of April 28, 2020 Petitioner suffers from chronic kidney disease, hypertension, renal insufficiency, sarcoidosis, and he is pre-diabetic. *Id.* at 26. The updated medical records shed new light upon Petitioner's underlying medical conditions and his vulnerability to the ongoing COVID-19 pandemic. Therefore, the Court will reconsider Petitioner's Motion for Compassionate Release.

**B. The Exhaustion Issue**

This Court previously held that the exhaustion requirement within § 3582(c)(1)(A) may be waived during the COVID-19 pandemic. *See supra* Part II.B; *Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020). Accordingly, the Court will waive the exhaustion requirement due to the ongoing threats imposed by COVID-19. Alternatively, the Court finds that Petitioner filed an administrative request for compassionate release with the Bureau of Prisons on December 4, 2019 and was denied on January 9, 2020. ECF No. 76 at 26. Therefore, Petitioner has satisfied the exhaustion requirement within § 3582(c)(1)(A) because Petitioner's administrative request was denied by the Bureau of Prisons.

**C. Resolution of the Defendant's Request for Compassionate Release**

In its consideration of the factors listed in 18 U.S.C. § 3553(a), the Court acknowledges that Petitioner is 50 years old and suffers from chronic kidney disease, hypertension, renal insufficiency, sarcoidosis, and he is pre-diabetic. While Petitioner's conduct and criminal history have not changed, he is under extreme threat from a virus that may be fatal if he contracts it.

The Court further considers the severity of the ongoing COVID-19 outbreak in federal prisons. *See e.g. Wilson v. Williams*, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020)

(documenting the BOP's ineffective efforts to curtail the spread of the virus within FCI Elkton). The Court is aware of growing evidence of the BOP's mismanagement of its vulnerable population during the COVID-19 pandemic. *See Wilson v. Williams*, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020) (documenting the "unacceptable" percentage of positive tests at FCI Elkton and BOP's "ineffective[ness]...at stopping the spread"). The *Wilson* court criticized the BOP for having "made only minimal effort to get at-risk inmates out of harm's way." *Id.* at *2.

Specific to each petitioner, the Court examines the Centers for Disease Control's ("CDC") list of risk factors for severe COVID-19 complications when assessing compassionate release motions during the pandemic. *United States v. Lewellen*, 2020 WL 2615762, at *4 (N.D. Ill. May 22, 2020). Upon review, Petitioner is particularly vulnerable to COVID-19 as the CDC lists chronic kidney disease, obesity and diabetes as underlying conditions that "are at increased risk of severe illness from COVID-19."[1] As previously mentioned, Petitioner is pre-diabetic and his additional ailments include chronic kidney disease, hypertension, renal insufficiency, and sarcoidosis. Accordingly, the Court finds that Petitioner presents extraordinary and compelling reasons to modify his sentence because of the great risk that COVID-19 poses to a person with his underlying health conditions.

During the COVID-19 pandemic, federal courts across the country have held that compassionate release is justified under similar circumstances. *United States v. Woodard*, 2020 WL 3528413 at *3 (E.D. Va. Jun. 26, 2020) ("Because Petitioner is extremely vulnerable to COVID-19, retaining him in prison... at the risk of increasing his exposure to a fatal viral infection does not serve the § 3553(a) factors and implicates an extraordinary and compelling reason for

---

[1] *People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Aug. 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.

release."); *United States v. Zukerman*, 2020 WL 1659880, at *6 (S.D.N.Y. Apr. 3, 2020) (granting compassionate release because "[w]hen the Court sentenced Zukerman, the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic (internal quotation marks and citation omitted)); *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020) (finding extraordinary and compelling reasons where defendant has "diabetes, a serious medical condition which substantially increases her risk of severe illness if she contracts COVID-19" (internal quotation marks, citation, and alteration omitted)); *United States v. Rodriguez*, 2020 WL 1627331, at *8 (E.D. Pa. Apr. 1, 2020) ("In the absence of a deadly pandemic that is deadlier to those with Mr. Rodriguez's underlying conditions, these conditions would not constitute 'extraordinary and compelling reasons.' It is the confluence of COVID-19 and Mr. Rodriguez's health conditions that makes this circumstance extraordinary and compelling." (citations omitted)); *see also United States v. Jepsen*, 2020 WL 1640232 (D. Conn. Apr. 1, 2020); *United States v. Gonzalez*, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020); *United States v. Muniz*, 2020 WL 1540325 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020).

Additionally, in its evaluation of the § 3553(a) factors, the Court also considers that Petitioner is now 50 years old and has spent over 21 years in prison for conduct that took place when Petitioner was 27 years old. ECF No. 86 at 2. The Court is aware of Petitioner's history of minor incident reports at the BOP, though Petitioner disputes the factual context of many of the reports. ECF No. 87-7. Petitioner has, however, participated in rehabilitative programming and developed a significant work history while incarcerated. ECF Nos. 87-2, 87-3, 87-7. Petitioner was also married in 2016 and has four surviving children from previous relationships. ECF No. 86 at ¶ 30; ECF No. 87-7.

Although Petitioner's original sentence was lawfully imposed in accordance with the § 3553(a) factors, serious illness and the potential for an accelerated death was decidedly *not* among the reasons for it. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic"). The Court believes Petitioner's conduct may be adequately addressed with a sentence of home confinement that diminishes his risk of infection and protects the public without overlooking the serious nature of the offense at issue. *See* 18 U.S.C. § 3553(a)(2)(A)–(C). Furthermore, Petitioner's sentence already includes a five-year term of supervised release at the conclusion of his incarceration. Upon granting Petitioner's Motion for Compassionate Release, Petitioner would still be subject to supervised release and the Court would impose an added condition of home confinement. Accordingly, at the conclusion of Petitioner's supervised release he will be 55 years old, having served over 21 years in prison, plus 5 years in home confinement. Under the circumstances, this penalty is sufficient but not greater than necessary for an individual who is in diminishing physical health and will not have access to the facilities of his offense.

Because Petitioner is extremely vulnerable to COVID-19, retaining him in prison simply to serve a higher percentage of his sentence at the risk of increasing his exposure to a fatal viral infection does *not* serve the § 3553(a) factors and implicates an extraordinary and compelling reason for release. The Court FINDS that Petitioner's underlying health condition in the wake of an ongoing COVID-19 pandemic present an extraordinary and compelling reason for relief from Petitioner's original sentence.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is **GRANTED**. Petitioner's sentence is reduced to TIME SERVED. Upon release Petitioner shall be placed on supervised release as previously ordered in his criminal judgment with a special condition of sixty (60) months of home confinement. The Bureau of Prisons **SHALL** place Petitioner in quarantine and release Petitioner within fourteen (14) days of the date of this Order. Petitioner is **DIRECTED** to contact the United States Probation Office within seventy-two (72) hours of his release.

**IT IS SO ORDERED.**

Norfolk, Virginia
September / , 2020

/s/
Raymond A. Jackson
**United States District Judge**